UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANDREA SALZMANN,
STEPHANIE PRITCHARD, and
BENJAMIN SANDERS,

        Plaintiffs,

        v.                    Case No. 22-C-894

GERALD WERGIN,
NICHOLAS WILSON, and
STAXOS, LLC,

        Defendants.

---

## DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

    Plaintiffs Andrea Salzmann, Stephanie Pritchard, and Benjamin Sanders brought this action against Defendants Staxos, LLC, formerly known as GuerraWilson Group, LLC (GWG), as well as GWG's owner, president, and Chief Executive Officer, Nicholas Wilson, and its vice president of government solutions, Gerald Wergin. Plaintiffs allege that Defendants failed to pay their statutorily required minimum and agreed upon wages, including bonuses, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and Wisconsin's Wage Payment and Collection Laws, Wis. Stat. ch. 109. The court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

    Wilson and Wergin appeared *pro se* in this case and filed answers to the amended complaint on February 13, 2023, and April 6, 2023, respectively. Staxos, as a limited liability company, was legally incapable of appearing in court unless represented by counsel. *See Philos*

*Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th Cir. 2011) (citation omitted). Because Staxos did not appear by counsel or file an answer in this case, the Clerk entered default as to Staxos on March 23, 2023. This matter comes before the court on Plaintiffs' motion for summary judgment against Wergin and Wilson. For the following reasons, the motion for summary judgment will be granted.

## PRELIMINARY MATTERS

Before turning to the substance of Plaintiffs' motion for summary judgment, the court must address Plaintiffs' argument that their facts be deemed admitted for the purposes of summary judgment because Defendants failed to comply with the court's summary judgment procedures. In this case, Defendants did not submit an affidavit or cite any evidence in response to the majority of Plaintiffs' proposed findings of fact. Pursuant to the local rules, the party opposing a motion for summary judgment must file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. Civil L.R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, he should include a statement, consisting of short, numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. Civil L.R. 56(b)(2)(B)(ii).

2

Case 1:22-cv-00894-WCG   Filed 05/10/24   Page 2 of 13   Document 42

The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling Inc.*, 599 F.3d 626 (7th Cir. 2010) (citing *Patterson v. Ind. Newspapers Inc.*, 589 F.3d 357, 360 (7th Cir. 2009)). The court will deem as admitted Plaintiffs' proposed findings of fact to which Defendants did not properly respond in accordance with the local rules. With these considerations in mind, the court turns to Plaintiffs' motion for summary judgment.

## BACKGROUND

GWG[1] was a master agent for AT&T. AT&T offers wireless phone lines and wireless device upgrades to customers through a direct channel—sales with an AT&T employee—or indirect channel—sales through an independent vendor such as a master agent or solutions provider. To sell AT&T services and products, a master agent, such as GWG, must have an "alliance channel contract" with AT&T that allows the master agent, as well as its representatives, to submit orders for wireless phone lines and wireless device upgrades through AT&T's ordering portal. The alliance channel contract dictates the type of customers to whom the master agent, and anyone associated with it, can sell these services and products. GWG's alliance channel contract with AT&T permitted GWG to sell wireless phone lines and wireless device upgrades to small- and medium-sized businesses and governments.

Plaintiffs worked in sales and account management for GWG and worked remotely in Wisconsin. Salzmann and Pritchard were salespeople, and they sold AT&T wireless phone lines and wireless device upgrades through phone and email communications. Salzmann and Pritchard would assess the customer's wireless device needs, develop a plan to meet those needs, enter an

---

[1] On May 9, 2022, Wilson changed the name of GuerraWilson Group, LLC, to Staxos, LLC. Wilson remained owner, president, and CEO of Staxos LLC. But at all times relevant to this action, the entity was operating as GWG.

3

order for the new lines or device upgrades on AT&T's ordering portal after the customer approved the quote, and help the customer activate the new line or device once it was received from AT&T. They also provided customer service and technical support when customers contacted them with questions about their devices or services. Sanders worked in a sales support role for GWG. His primary duties included preparing quotes for Salzmann and Pritchard, transferring phone numbers from a customer's old telecommunications provider to AT&T, placing orders for Salzmann and Pritchard on AT&T's ordering portal, and providing customer service and technical support when customers had questions about their devices or services. Salzmann worked with customers in New York, Wisconsin, Missouri, Maryland, Texas, North Carolina, Illinois, and Colorado; Pritchard worked primarily with customers in Texas; and Sanders worked with both of their customers.

GWG did not require that Plaintiffs have a specific degree or license to perform their jobs. To perform their work, Plaintiffs needed a phone, a computer, an internet connection, an email address, and access to AT&T's ordering portal. Plaintiffs paid for their own cellphones and internet connection, but GWG paid for Plaintiffs' desk phones, computers, computer monitors, computer docking stations, and email addresses and invested the time and effort to secure the alliance channel contract with AT&T. Plaintiffs did not make any financial investments in GWG, nor did they risk losing any investments or other financial amounts from their work.

Sanders worked for GWG from September 2018 through February 28, 2021. GWG agreed to pay Sanders a monthly salary of $4,750.00. Salzmann worked for GWG from August 2018 through February 12, 2021, and Pritchard worked for GWG from May 2018 through January 17, 2021. GWG agreed to compensate Salzmann and Pritchard with a monthly base pay of $4,000.00 and a monthly bonus of $2.00 per wireless line activation or wireless device upgrade they entered into AT&T's ordering portal. From May 2020 through her final day at GWG, Salzmann entered

4

the following line activations or wireless device upgrades into AT&T's ordering portal: 119 in May 2020; 196 in June 2020; 1,302 in July 2020; 95 in August 2020; 86 in September 2020; 46 in October 2020; 82 in November 2020; zero in December 2020; five in January 2021; and zero in February 2021. From May 2020 through her final day at GWG, Pritchard entered the following number of wireless line activations or wireless device upgrades into AT&T's ordering portal: 213 in May 2020; 295 in June 2020; 262 in July 2020; 149 in August 2020; 108 in September 2020; 165 in October 2020; 94 in November 2020; 160 in December 2020; and one in January 2021.

Wilson was responsible for making decisions regarding payments to Plaintiffs. He would calculate the bonuses due to each Plaintiff and direct his bookkeeper to send Plaintiffs the amount calculated. GWG agreed to pay Plaintiffs half of their base salary on the first of the month and the remaining half plus their full commission, if any, on the twentieth of the month. GWG did not keep any time records for Plaintiffs. Plaintiffs claim that GWG required them to work at least 40 hours per workweek and that, on average, they worked eight-hour days, Monday through Friday.

GWG timely paid Plaintiffs their monthly salary and bonuses through the July 1, 2020, pay date. But, due to GWG's cashflow problems, Wilson decided that GWG would stop paying Plaintiffs after July 1, 2020. Instead, Wilson requested that Wergin make payments to Plaintiffs with his own personal funds and advised that GWG would pay Wergin back. Wergin began making payments on behalf of GWG to Plaintiffs in July 2020 and August 2020 from funds transferred from Wilson as well as from his personal funds. Defendants failed to make certain payments to Plaintiffs, however. Salzmann claims to be owed $2,494.00 in unpaid minimum wages and $10,094.00 in unpaid base salary and commissions. Pritchard claims to be owed $3,132.00 in minimum wages and $16,692.00 in unpaid base salary and commissions. Sanders claims to be owed $4,350.00 in minimum wages and $17,600.00 in unpaid salary.

5

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Plaintiffs assert that GWG failed to compensate them at the required minimum wage rate in various workweeks between July 2020 and the end of Plaintiffs' employment in violation of the FLSA. The FLSA requires employers to pay their covered employees a federal minimum hourly wage. *See* 29 U.S.C. § 206(a)(1) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour[.]").

Under the FLSA, an "employee" is defined as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" means to "suffer or permit to work," § 203(g). Defendants

maintain that Plaintiffs were independent contractors, not employees. The economic realities test separates employees, who are subject to the FLSA's protections, from independent contractors, who are not. *See Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987). The factors the court weighs in assessing the economic reality of the employment arrangement, in addition to consideration of the totality of the circumstances, include (1) the degree and nature of control that the employer has over the manner in which the alleged employee performs the work; (2) the chance that the alleged employee has for profit or loss depending on his skill; (3) the alleged employee's own investment in the equipment or materials needed to complete the work; (4) whether the service at issue requires special skill; (5) whether the employment relationship is permanent; and (6) the extent to which the alleged employee's service is an "integral part" of the employer's business. *Id.* (citation omitted).

In this case, the undisputed facts demonstrate that Plaintiffs were employees of GWG. Plaintiffs worked for GWG for close to three years. *See Wenckaitis v. Specialty Contractors, Inc.*, No. 20-CV-3743, 2023 WL 4472567, at *5 (N.D. Ill. July 11, 2023) ("A longer relationship between the worker and a company weighs in favor of employment rather than independent contractor status." (citing *Lauritzen*, 835 F.2d at 1537)). As to the degree of control GWG had over the manner in which Plaintiffs' work was to be performed, GWG's alliance contract with AT&T clearly governed the manner in which Plaintiffs could sell AT&T products and to whom those products could be sold to, and GWG retained the authority to remove Plaintiffs' access to the AT&T ordering portal. Plaintiffs' sales and support services related to the sale of AT&T products and services were essential to GWG's business as a master agent for AT&T. Plaintiffs' opportunity for profit or loss depended not on their managerial skills but instead on their ability to make sales, and their roles did not require any specialized skill. In addition, Plaintiffs made no

7

financial investment in GWG. Although Plaintiffs paid for their own cellphones and internet connection, these expenses were negligible. GWG paid for Plaintiffs' desk phones, computers, computer monitors, computer docking stations, and email addresses. Based on the totality of the circumstances, Plaintiffs were GWG employees.

Plaintiffs have also established that they are employees "covered" under the FLSA. To be covered under the FLSA, the employee must be (1) engaged in interstate commerce; (2) engaged in the production of goods for commerce; or (3) employed by an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 206(a). Plaintiffs assert that they are covered by the FLSA because they were engaged in commerce. "Employees are 'engaged in commerce' . . . when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof," which includes employees who "regularly use the mails, telephone or telegraph for interstate communication." 29 C.F.R. § 779.103. Here, it is undisputed that Plaintiffs worked from Wisconsin and worked with and made sales to customers outside of Wisconsin.

Finally, Plaintiffs have shown that GWG failed to pay them the minimum wage. The employee bears the burden of "proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–62. Where, as here, an employer fails to maintain time and payroll records, the employee meets his burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. An employee may rely on his recollection to establish the hours he worked.

*Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016) (citing *Mt. Clemens*, 328 U.S. at 687). If the employee demonstrates that he performed work for which he was improperly compensated, the burden shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687–88.

Salzmann, Pritchard, and Sanders worked on average Monday through Friday, 8:00 a.m. to 4:30 p.m., with a 30-minute break for lunch. Plaintiffs have submitted charts, which detail that GWG failed to pay Salzmann $2,494.00 in minimum wages for the pay dates ranging from November 1, 2020, to February 20, 2021; failed to pay Pritchard $3,132.00 in minimum wages for the pay dates ranging from July 20, 2020, to January 20, 2021; and failed to pay Sanders $4,350.00 for the pay dates ranging from November 1, 2020, through March 1, 2021. Pls.' Br. in Supp. at 18–20, Dkt. No. 27. Although Wergin and Wilson generally dispute the amounts of unpaid wages Plaintiffs argue they are owed, they have not offered evidence to rebut Plaintiffs' calculations. Based on the record before the court, Salzmann is entitled to $2,494.00 in unpaid minimum wages and $2,494.00 in liquidated damages; Pritchard is entitled to $3,132.00 in unpaid minimum wages and $3,132.00 in liquidated damages; and Sanders is entitled to $4,350.00 in unpaid minimum wages and $4,350.00 in liquidated damages for GWG's violations of the FLSA. *See* 29 U.S.C. §§ 206(a)(1); 216(b).

Plaintiffs also assert that Defendants violated Wisconsin law by failing to pay their agreed-upon salary and bonuses. *See* Wis. Stat. § 109.03. Section 109.03 provides that "[e]very employer shall as often as monthly pay to every employee engaged in the employer's business, except those employees engaged in logging operations and farm labor, all wages earned by the employee to a day not more than 31 days prior to the date of payment." An employer who fails to pay appropriate

wages is liable to the employee in the amount of the unpaid wages, in addition to up to fifty percent of the unpaid wages as civil penalties, and attorney fees and costs. Wis. Stat. §§ 109.03; 109.11(2)(a).

Defendants again dispute that Plaintiffs were employees under Wis. Stat. ch. 109. "Employer" is defined as "any person engaged in any activity, enterprise or business employing one or more persons within the state, including the state and its political subdivisions and charitable, nonprofit or tax-exempt organizations and institutions." Wis. Stat. § 109.01(2). "Employee" is defined as "any person employed by an employer." Wis. Stat. § 109.01(1r). Like the FLSA, Wisconsin's minimum wage law defines employer with a focus on control. *See Pope v. Espeseth, Inc.*, 228 F. Supp. 3d. 884, 891 (W.D. Wis. 2017) (noting that Wisconsin's minimum wage law requires "at least as much of a showing of control as the FLSA"). As the court explained earlier, GWG controlled the manner in which Plaintiffs' work was to be performed. The undisputed evidence demonstrates that Plaintiffs were employees of GWG.

Plaintiffs have also established that GWG failed to pay their wages. Section 109.01(3) defines "wages" as "remuneration payable to an employee for personal services, including salaries, . . . bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy." GWG agreed to pay Salzmann a monthly salary of $4,000.00 and a monthly bonus of $2.00 per activation or upgrade she entered into AT&T's ordering portal. Salzmann has submitted a chart showing that GWG failed to pay her a total of $10,094.00 in salary and bonuses for the pay dates ranging from August 20, 2020, to February 20, 2021. *See* Pls.' Br. in Supp. at 25. GWG also agreed to pay Pritchard a monthly salary of $4,000.00 and a monthly bonus of $2.00 per activation or upgrade she entered into AT&T's ordering portal. Pritchard has submitted a chart showing that GWG

10

failed to pay her a total of $16,692.00 in salary and bonuses for the pay dates ranging from July 20, 2020, to January 20, 2021. *Id.* at 27. GWG agreed to pay Sanders a monthly salary of $4,750.00. Sanders has submitted a chart showing that GWG failed to pay him a total of $17,600.00 in salary for the pay dates ranging from July 20, 2020, to March 1, 2021. *Id.* at 29. Though Wergin and Wilson generally dispute the amounts of unpaid wages Plaintiffs argue they are owed under Wisconsin law, they have not offered evidence to rebut Plaintiffs' calculations. In short, Plaintiffs have established that GWG violated Wis. Stat. ch. 109 by failing to pay their agreed-upon salary and bonuses.

Plaintiffs assert that the court should award civil penalties of fifty percent of their unpaid salary and bonuses pursuant to Wis. Stat. § 109.11(2)(a). "Only wrongful withholding of wages for dilatory or other unjust reasons should be penalized." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 54, 287 Wis. 2d 560, 706 N.W.2d 667. "The decisions whether to impose a penalty under Wis. Stat. § 109.11(2)(a) . . . [is] committed to the trial court's discretion." *Id.* In this case, Plaintiffs acknowledge that GWG stopped paying them because AT&T stopped paying GWG. But they argue that GWG acted for dilatory reasons by stringing Plaintiffs along, through promises made by Wilson that he would make everyone whole when he received payment from AT&T, and by delaying the inevitable, "that it would not pay them for work performed." Pls.' Br. in Supp. at 30. Without more, the court is unpersuaded that making a promise to pay Plaintiffs what they were owed once AT&T paid GWG shows a dilatory or unjust reason to withhold wages. Thus, an award of civil penalties is unwarranted in this case.

Recovery under both the FLSA and Wisconsin law would constitute an impermissible double recovery. *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008). Plaintiffs request that the court award them damages under Wis. Stat. ch. 109 because

11

it is the statutory scheme that results in the highest recovery. Pls.' Br. in Supp. at 31 n.3. In sum, Salzmann is entitled to the amount of $10,094.00; Pritchard is entitled to the amount of $16,692.00; and Sanders is entitled to the amount of $17,600.00.

Finally, Plaintiffs argue that Wergin and Wilson should be held liable for GWG's violations. The FLSA broadly defines "employer" to permit naming another employee rather than the employer as a defendant, "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). Although no Wisconsin court has addressed whether an individual can be held liable for a company's violation of Wis. Stat. ch. 109, Wisconsin, like the FLSA, broadly defines "employer" to include "any person engaged in any activity, enterprise or business employing one or more persons within the state, including the state and its political subdivisions and charitable, nonprofit or tax-exempt organizations and institutions." Wis. Stat. § 109.01(2). Here, it is undisputed that Wilson was GWG's owner, president, and CEO, was responsible for making decisions regarding payments to Plaintiffs, made the decision to stop paying Plaintiffs after July 1, 2020, and directed Wergin to begin making payments to Plaintiffs. Wergin, the vice president of government solutions, supervised Plaintiffs and began making payments to Plaintiffs on behalf of GWG with funds Wilson transferred to him as well as with his own personal funds. But these amounts did not fully compensate Plaintiffs for their wages. Because Wilson and Wergin had supervisory authority over Plaintiffs and were responsible for the violations of Wis. Stat. ch. 109, they are personally liable for such violations. *See Montana v. JTK Restorations, LLC*, No. 14-C-487, 2015 WL 5444945 (E.D. Wis. Sept. 14, 2015) (finding that the owner of the company, as well as the company itself, were liable for unpaid wage violations under the FLSA and Wis. Stat. ch. 109).

## CONCLUSION

For these reasons, Plaintiffs' motion for summary judgment (Dkt. No. 26) is **GRANTED** against Defendants Gerald Wergin, Nicholas Wilson, and Staxos, LLC. Andrea Salzmann is entitled to judgment in the amount of $10,094.00; Stephanie Pritchard is entitled to judgment in the amount of $16,692.00; and Benjamin Sanders is entitled to judgment in the amount of $17,600.00. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of May, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge